EAGLE & PHENIX MILLS *v.* HERRON, by next friend.

1. A petition for damages, which charges negligence on the part of the "defendant, its servants or agents," is not subject to demurrer on the ground that this allegation is equivocal and ambiguous in that it charges negligence against either the defendant or its servants or its agents, the evident and unmistakable intention of the language and of the whole petition being to charge negligence against the defendant acting through the medium of its servants or agents.

2. It is not error for the trial judge, in charging the jury, to summarize the pleadings and instruct them that "that makes the issue that you are sworn and empanelled to pass upon," without further charging them upon a theory of defense not set up in the defendant's plea, and upon which a charge is not requested by counsel and is not demanded by the evidence.

3. It was not cause for a new trial that the judge read in charge to the jury a code section part of which was applicable to the case under consideration and part not, it not appearing that the reading of the inapplicable part was calculated to mislead the jury, erroneously affected their verdict, or was prejudicial to the rights of the complaining party.

4. Where the defendant (a cotton-mill company) in an action for damages on account of injuries alleged to have been sustained by reason of the operation of a defective pulley on one of its machines admitted "that there was a small piece of the rim broken off on the side [of the pulley] next the machine," but denied "that the pulley was thereby made defective," it was not error for the court, in charging the jury, to refer to the break as a defect, they being expressly instructed that the plaintiff could not recover unless this break, or defect, caused the injuries sued for.

5. It was not error, after charging that regardless of whether the defendant was negligent or not, if the plaintiff, a child, could have avoided his injuries by the use such care as his mental and physical capacity fitted him for exercising, he could not recover, for the court to add : "If you believe that the child, . . in the exercise of all his mental capacity, such as he was possessed of at the time, did not know that the same was dangerous, and the accident happened by reason of this defect in the pulley, then he would be entitled to recover."

6. There was no error in any charge complained of in the motion, which is not herein specifically considered ; the requests to charge, so far as legal and pertinent, were fully covered by the charge as given ; and the evidence warranted the verdict, which was not excessive.

Argued December 18, 1903.—Decided January 15, 1904.

Action for damages.   Before Judge Butt.   Muscogee superior court.   July 28, 1903.

*Goetchius & Chappell,* for plaintiff in error.   On demurrer: Civil Code, §§ 2612, 2902, 3027; 92 *Ga.* 712; 83 *Ga.* 75; 4 Thomp. Corp. §§ 5191, 5196, 5233; 16 *Ga.* 164; 107 *Ga.* 235; 103 *Ga.* 512; 115 *Ga.* 1009; 105 *Ga.* 381; 101 *Ga.* 673; 111

*Ga.* 112 ; 90 *Ga.* 416.   On charge, and refusals to charge: Civil Code, §§ 2610–12, 2901–2, 3830, 5479 ; *Ga. Rep.* 112/667, 680, 765 ; 106/786 ; 101/263 ; 104/224 ; 110/474, 494 ; 103/75, 579 ; 116/325, 431 ; 118/273, 418, 421 ; 108/194 ; 115/542–6 ; 86/40 ; 95/615 ; 77/692 ; 90/500 ; 91/76 ; 79/782 ; 93/746 ; 87/494 ; 103/288 ; 44 L. R. A. 65, 66, 84 ; 1 Shear. & Redf. Neg. § 218 ; Thomp. Neg. § 48.

*Hatcher & Carson,* contra, cited 20 Am. & Eng. Enc. L. (2d ed.) 98–9 ; *Ga. Rep.* 98/660 ; 115/542 ; 117/110 ; 113/708.

CANDLER, J.   This was an action by an employee of a cotton-mill company, to recover damages on account of personal injuries sustained in the discharge of his duties and alleged to have been caused by the negligence of the employer.   The plaintiff was a minor, twelve years old, and sued by his mother as next friend. From his petition it appears that he was employed by the defendant in the capacity of "alley boy," his duties being to look after a number of carding machines and to keep the lint from accumulating around and under them, so as to prevent their becoming clogged.   At stated times he was required to get down under the machines and clean them, and it was while so doing that his injuries were received.   He alleged that in order for him to clean the machines it was necessary for him to get down on the floor in a very small space between the machine and a wooden box, or conveyer, which was situated just in front of it, and that his undivided attention to the work in hand was required to prevent his fingers from being caught in the machinery.   Under and parallel with the box before mentioned, and immediately in front of the machines, was certain shafting, attached to which was a pulley, and when the machine was in operation a leather belt extended from the pulley on the shafting to another pulley attached to the machine.   In stopping the machine to permit of its being cleaned, it was customary "to slip the belt off the pulley attached to the carding machine, when the pulley to the shafting would continue in motion and would turn in the loose leather belt aforesaid."   While cleaning the machine, on account of the small space in which it was necessary for him to get, the plaintiff's feet and legs extended "near to and in proximity with said revolving shafting and pulley."   It was alleged that while the plaintiff was engaged in cleaning one of the machines, "the leather belt having

been slipped off the pulley of the carding machine, and it being stopped so as to enable petitioner to clean it off with his hands, the leather belt wrapped around the shafting near the floor and caught the foot of petitioner in it, and caused his leg and foot to wrap around said shafting, and broke his leg and foot, which necessitated the amputation of one foot between the ankle and knee." The petition charged that the injuries were due to the negligence of the defendant, in that the pulley attached to the shafting was defective and dangerous, having on its surface a triangular broken place which tended to and did cause the belt to catch and wind around the shafting; that this defect had existed for a considerable time, and was, or ought to have been, known to the defendant, its servants or agents, but could not have been discovered by the plaintiff in the exercise of ordinary care, because it was kept in motion, and while so moving was covered by the belt, which concealed it from view. It was also charged that the defendant was negligent, "in allowing the loose belt, when removed from the carding machine, to dangle and lie on the floor when the pulley on the shafting was in motion, as was the custom and as petitioner was directed to let it do;" and in putting the plaintiff, a child twelve years old, at work with the machine in its broken condition, without warning him of the danger to which he was exposed. The defendant demurred generally and specially; its demurrer was overruled, and it excepted pendente lite. The jury found for the plaintiff $5,000, and the defendant made a motion for a new trial, which was overruled. The bill of exceptions to this court assigns error upon the overruling of the demurrer and of the motion for a new trial.

1. There can be no doubt that the petition was good as against a general demurrer, and we do not think it fairly subject to the attack made upon it by the special demurrer. The ground that the petition does not charge that the defendant or any one whose knowledge is chargeable to it knew of or had reason to know of the alleged defect in the shafting pulley is not well taken, in view of the distinct allegation "that said broken place in said pulley had existed for some time, and was known to defendant, its servants or agents, or ought to have been known." The demurrer does not make the point that the petition fails to set out who of the defendant's agents or servants were responsible

for the alleged defect or were guilty of negligence in failing to have it repaired; but stress is laid upon the contention that the allegation of negligence on the part of "defendant, its servants *or* agents," is equivocal and ambiguous, in that it charges negligence against either the defendant or its servants or its agents, without definitely alleging that any particular person or persons was or were guilty of negligence. It is true that pleadings are to be construed most strongly against the pleader; and it is also true that, taking the words, "defendant, its servants or agents," alone, they might be given an entirely disjunctive meaning. In other words, the ellipsis marked by the comma after the word "defendant" may be supplied by the word "or," instead of the word "and." But the rule of strict construction of pleadings is one of law, and not of grammar; and where it is plainly evident that a petitioner intends to charge negligence against a defendant corporation through the medium of its servants or agents (by whom alone it can do any act), that rule does not require that his words shall be grammatically distorted into a meaning which was far from the pleader's mind, and which, under the circumstances, is unwarranted. The cases cited by counsel for the plaintiff in error on this point have, in our opinion, no application to the case now under consideration. In all of them the use of the word "or" gave to the language employed a distinct disjunctive meaning which rendered it open to the attack made on it; and if it be conceded that in the present case the plaintiff intended to use the words in the meaning sought to be placed upon them by counsel for the defendant, there is no doubt that the demurrer should be sustained. What we hold, however, is that the allegation that the plaintiff's injuries were caused by the negligence of "defendant, its servants or agents," does not mean that either the defendant or its servants or its agents was at fault; but that the negligent acts complained of were done by the defendant acting through its servants or agents. As against the demurrer filed the allegations of negligence in the petition are set forth with sufficient particularity to enable the defendant to prepare its defense, and we find no reason for reversing the judgment on this ground.

2. In his charge to the jury the trial judge, after summarizing the allegations of the plaintiff's petition, said: "To this declaration the defendant comes into court and denies every material allega-

tion set forth in the petition of the plaintiff, and says that the plaintiff was hurt by his own carelessness; and that makes the issue that you are sworn and empanelled to pass upon." Error is assigned upon this charge, because "it excluded the issue supported by proof that the plaintiff was hurt by 'unavoidable accident,' and nowhere else is the error cured by submitting to the jury whether said hurt was the result of unavoidable accident." An examination of the defendant's answer fails to disclose any reference to this theory as a defense to the suit. For the most part the plea was a categorical admission or denial of the allegations of the petition, the concluding paragraph being "that if plaintiff was injured and damaged by the accident as named in said petition, the same was the result of his own carelessness and negligence, and without any fault on the part of this defendant." In charging the jury as before indicated, the court was simply outlining the issues made by the pleadings, and, as will have been seen, this was accurately done. It does not appear that counsel for the defendant made any request for a charge on the subject of unavoidable accident, and as the evidence introduced did not demand such a charge, the failure to give it will not be cause for a new trial.

3. In charging the jury as to the duty of a master to his servant, the court read section 2611 of the Civil Code in its entirety. The motion complains that the first clause of the section in question, to wit, "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency," was inapplicable to this case, and should not have been given, and error is assigned on the charge for that reason. It is true that there was not involved in this case any question as to the diligence or negligence of the master in the selection or retention of its servants, and it would perhaps have been best if the clause quoted had been omitted from the charge. It is not made to appear, however, in what way, if any, this charge injuriously affected the rights of the defendant company; and it is difficult to conceive that the jury were misled or in any way influenced by it, or that it could have affected the verdict. The refusal to grant a new trial on this ground will not, therefore, work a reversal of the judgment.

4. Complaint is also made that the court erred in using the

following language in charging the jury: "It is admitted and stated by the defendant that there was a slight defect in this pulley, to wit, that there was a slight break in the edge of the same; but they deny that the injury was caused by reason of this defect;" and: "The plaintiff must show in this particular case that the injury was caused by this defect in the machinery, to wit, this break in the pulley." The objection urged against this charge is, that while the defendant in its answer admitted that there was a break in the pulley, it denied that this break constituted a defect; and it is urged that the charge was error in that it assumed as true an assertion that was expressly controverted, viz., that the pulley was defective. What constitutes a defect, in machinery as in men, is not always easy to determine. Ordinarily a pulley with a piece broken out of it would be considered defective to the extent that it fails to come up to the standard of a perfect pulley, just as a one-armed man or one with a besetting sin is considered defective in failing to measure up to physical or moral standards of human perfection. If a pulley with a small piece broken out of it is not defective, then why not make them all with pieces broken out, and effect a saving in raw material? A pulley with a piece broken out of it may nevertheless be capable of good service, in the same way that a man may be a highly useful member of society in spite of a physical affliction or a moral weakness; but, as a matter of terminology, is it not still a defective pulley? The real question was, whether the break in the pulley — call it a defect or what you will — was responsible for the plaintiff's injuries; and this question the trial judge fairly and ably presented to the jury.

5. The court, after charging the jury that if the plaintiff, in the exercise of such care as his mental and physical capacity fitted him for exercising in the actual circumstances under investigation, could have avoided the injury, he would not be entitled to recover, regardless of whether or not the defendant was negligent, added the following qualification: "If you believe that the child, or the plaintiff in this particular case, in the exercise of all his mental capacity, such as he was possessed of at the time, did not know that the same was dangerous, and the accident happened by reason of this defect in the pulley, then he would be entitled to recover. How this is, it is for you to say, and not for

the court." We see no error in this qualification. It can certainly make no difference if, as contended by counsel, it is an independent proposition of law under the name of a proviso, so long as it is a correct one; and the objection that the judge failed, in this qualifying charge, to instruct the jury that the plaintiff could not recover if his injuries were caused by his own negligence is met by the fact that this proposition was fully announced in the original charge to which the "proviso" was added.

6. The foregoing disposes of every contention made by the motion for a new trial, which, in our opinion, merits extended discussion. It was not error to qualify a charge to the effect that the defendant would not be liable for injuries due to a defect in its machinery, if it used ordinary care in selecting such machinery, by a proviso that it did not know of the defect which caused the injury. Of the two requests to charge set out in the motion, one was unsound and was properly refused; while the other was fully covered by the charge as given. The evidence was in many respects conflicting, but the conflicts were reconciled by the jury, whose duty it is to pass upon disputed issues of fact, in favor of the plaintiff. We need hardly add that a verdict for $5,000 damages, for injuries to a twelve-year-old boy resulting in the loss of his leg, and in his being thus maimed and crippled for life, was not excessive. *Judgment affirmed. All the Justices concur.*