SOUTHERN COTTON OIL COMPANY *v.* DUKES.

¹121    787
'129    510
129    511

1. When in an action for personal injuries the original petition alleges certain acts of negligence, and by amendment additional acts of negligence are alleged, and the plaintiff in open court abandons all right to recover on the acts of negligence alleged in the original petition, it is not error to submit the case to the jury entirely upon the issues made by the amendment, making no reference to the issues of negligence raised by the original petition.

2. As a general rule, a servant is under no obligation to inspect the appliances about which he works or that part of the plant by which his safety may be affected, for the purpose of discovering concealed dangers which would not be disclosed by superficial observation.

3. When machinery, though not perfect in all respects, can be and has been used with safety under given circumstances, a servant using such machinery is warranted in acting upon the assumption that the master has fulfilled and will continue to fulfil his duty, to see that the circumstances are such that the machinery can be used with safety, unless it is apparent to the servant that the master has failed to fulfil his duty in this respect, or such failure can be ascertained by the servant's using that degree of care which the law imposes upon him.

4. One seeking to hold an infant bound upon a contract, for the reason that the consideration of the contract was retained after arrival of the infant at majority, has imposed upon him the burden of showing possession of the consideration after majority and retention for a sufficient length of time that a ratification of the contract is to be inferred.

5. If the infant "has lost, expended, or squandered the consideration during his minority, this is nothing more than the law anticipates of him, and he can not be required to purchase the right of reclaiming his own by still further abstractions from his estate."

6. A "linter" in an oil-mill, who is an infant, is not engaged in a profession, trade, or business, within the meaning of the Civil Code, § 3650, so as to make him bound by a contract made with his employer in reference to a claim for damages for personal injuries sustained in the course of his employment.

7. The fact that an infant is receiving the proceeds of his own labor is not alone sufficient to establish that permission on the part of his parent has been given to engage in the business in which the amounts received by him are earned.

8. The charge was not subject to any of the criticisms made in the assignments of error. The evidence authorized the verdict, and no reason appears for reversing the judgment.

Argued December 14, 1904. — Decided January 28, 1905.

Action for damages. Before Judge Spence. Calhoun superior court. January 25, 1904.

Dukes brought suit against the Southern Cotton Oil Company, for personal injuries sustained while working as an employee of the defendant in an oil-mill. The negligence alleged in the original petition was the failure of the defendant to furnish machinery equal in kind to that in general use and ordinarily safe for those who operate it with proper care; the specific act of negligence alleged being that the defendant furnished a seed-shaker which was connected by a belt with the main shafting in a building, in which the seed-shaker was so arranged that it became choked up and would not run; that the belt connecting the shaker with the main shafting was pieced, spliced, and otherwise defective, so that when the plaintiff, in the performance of his duty, went to place in position the belt connecting the seed-shaker with the main shafting,

additional tension was put on the belt on account of the choked condition of the shaker, and the belt broke, throwing the plaintiff into a pulley and thereby injuring him seriously and permanently. By amendment the plaintiff alleged that the defendant was negligent in failing to furnish a reasonably safe place for the plaintiff to work, of which fact the defendant had knowledge, or had reasonable opportunity to have had knowledge, and of which the plaintiff had no knowledge and could not have known by ordinary care; that the place in which plaintiff was ordered to work by the superintendent in charge of the mill was especially dangerous at the particular time of the injury, by reason of the fact that the seed-shaker mentioned above, which with the other machinery and belting to which it was attached was ordinarily and reasonably safe at other times, had, upon the Saturday night before (the plaintiff's injuries having been sustained on Monday), become unsafe and dangerous by reason of the fact that it had become choked with cottonseed and other obstructions, which fact the defendant knew or could by the exercise of ordinary care have known, and the plaintiff did not know and could not by the exercise of reasonable care have informed himself; and that by reason of these facts the risk of his employment was unusually and unreasonably increased. The defendant in its answer admitted that the plaintiff was an employee and was injured while attempting to place the belt upon the shafting, but upon various grounds denied any liability. It was alleged that the plaintiff was employed as a "linter-man," and not as a seed-shaker man, and that when he was engaged in putting the belt upon the shafting he was outside the line of his duty; that he did not exercise ordinary care while engaged in placing the belt upon the shafting; that the machinery was of good quality, not defective, reasonably adapted to the use intended, and could be, had been, and was being used with safety to the employees; that it was inspected and tested, and always kept in a safe condition for use in a proper manner; that the seed-shaker was not choked: that the belt was not unserviceable; and that the injury was caused solely by the plaintiff's unskillfulness and careless handling of the belt; that the defendant had settled with the plaintiff for all wages and damages sustained, and he had executed and delivered to it, under his own hand, a written release from all claim resulting from the occurrence alleged in the

petition ; that he had been instructed and informed as to the dangers incident to the work in which he was engaged, that he well knew the dangers, and had taken the risk incident thereto. The trial resulted in a verdict for the plaintiff for $3,500. The defendant made a motion for a new trial, which was overruled, and it excepted.

*J. J. Beck* and *King, Spalding & Little,* for plaintiff in error. *A. G. Powell* and *W. D. Sheffield,* contra.

COBB, J.  1. It appeared from the plaintiff's evidence that the belt was in a defective condition and that its condition was well known to him; and thereupon, in open court, plaintiff's counsel announced that he would not contend for a recovery upon the allegations of negligence alleged in the original petition, which related to the defective character of the machinery furnished, but would rely entirely upon the averments of negligence contained in the amendment. The court in its charge to the jury did not submit any issue growing out of the acts of negligence alleged in the original petition, but submitted the case upon the issues made by the amendment and the answer. Error is assigned upon the failure of the judge to submit the issues involved in the original petition and answer. We do not think there was any error in this action of the court. The effect of the announcement in open court was the same as if the plaintiff had stricken from his petition the allegations of negligence contained in the original petition. They were thereafter not necessary to be considered, and the court did not err in not submitting to the jury the issues made by the original petition.

2, 3. When a master furnishes for the use of a servant machinery which is defective, or not properly adapted to the work which the servant is employed to perform, and the use of such machinery subjects the servant to dangers which may result in injury, and the servant either knows or could by the exercise of reasonable diligence discover that the machinery is defective and not adapted to the work in which he is engaged, the master is not generally responsible to the servant for an injury received as the result of the use of such machinery. But the mere fact that machinery is not perfect and not adapted to use under all circumstances will not necessarily prevent a recovery by the servant,

for injury from the use of such machinery. If the machinery, though defective, can be safely used for certain purposes and under certain circumstances, and the servant has reason to believe that it will not be used except for such purposes and under such circumstances, he has a right to recover for injuries which he might sustain as the result of the master permitting the use of the machinery for other purposes and under other circumstances, such purposes and circumstances not being brought to the knowledge of the servant and he not being able to inform himself of them by the use of ordinary care. It was admitted that the belt was not perfect. It was therefore defective in that sense. It was, however, not a belt that was so defective as not to be proper for use under any circumstances. See *Eagle & Phenix Mills* v. *Herron*, 119 *Ga.* 389. The seed-shaker and sand-screens, which were in a room other than the one in which the plaintiff was hurt, were not perfect in all respects. The seed-shaker would become choked, and the evidence shows that it had become choked on previous occasions. When not in a choked condition it could be safely used, and the belt, though defective in some particulars, could be used with safety when the seed-shaker was not in a choked condition. So long as the seed-shaker was not choked it was proper for the master to allow the belt to be used in connection therewith, and the servant would not be at fault in using the machinery consisting in part of the defective belt and the imperfect seed-shaker. Whether the shaker was in a condition to be properly used with the belt furnished was a matter that could be ascertained, and it was the duty of the master to cause inspections to be made for this purpose at proper times, and the failure to make proper inspections at proper times would be negligence on his part. If the servant was also bound to inspect the shaker before using the belt, then he would be negligent if he used the belt without making such inspection. But was he bound to make such inspection? When he reported for work at the proper time and at the proper place, did not the servant have a right to assume that the master had performed his duty by making the inspection necessary and that the machinery was in such condition that it was safe for operation, the choked condition of the seed-shaker not being apparent to the servant at the time? The condition of the shaker being discoverable only by inspection, and the

duty of inspection not being within the scope of the work for which he was employed, he had a right to rest upon the assumption that the master had performed his duty to see that the machinery was in proper condition for work, that is, that the seed-shaker was not choked. See *Duke* v. *Bibb Mfg. Co.*, 120 *Ga.* 1074. In *McDonnell's* case, 118 *Ga.* 86, 92, it was held that a machinist who was employed to repair the pop-valve upon an engine was not bound to inspect the boiler of the locomotive upon which he was at work, and that therefore his widow was entitled to recover from his employer for his homicide resulting from an explosion of the boiler, notwithstanding the boiler was in a dangerous and defective condition at the time he was at work, and that this fact could have been easily ascertained by an inspection of the boiler. See also *Austin* v. *Appling*, 88 *Ga.* 54 (2). The defect in the seed-shaker not being patent and apparent to the servant at the time he attempted to place the belt in position, and there being no duty imposed upon him to make an inspection for defects which were not apparent, he was not at fault in attempting to do that which, under ordinary circumstances, could have been done with safety. See 1 Labatt on Master & Servant, § 408.

4, 5. The plaintiff was a minor at the time of the injury as well as at the time of the alleged settlement relied upon by the defendant as an accord and satisfaction. It does not appear from the evidence that the plaintiff had in his possession at the time he arrived at majority any of the money which was paid to him under the settlement. If when he arrived at majority he had in his possession the whole amount paid to him, or possibly if he had any substantial part thereof, the retention of the same by him after arrival at majority might have amounted to a ratification. See *McKamy* v. *Cooper*, 81 *Ga.* 679. But there is nothing in the evidence to bring the case within this rule; and the burden was on the defendant to show a ratification resulting from possession and retention of the proceeds by the plaintiff after his arrival at majority. If an infant has "lost, expended, or squandered the consideration during his minority, this is nothing more than the law anticipates of him, and he can not be required to purchase the right of reclaiming his own by still further abstractions from his estate. Otherwise the rule would practically strike down the shield which the law, by reason of his inexperience and youth,

throws around him." Field on Infants, § 15. See also Clark on Contracts (2d ed.), 173. In *Shuford* v. *Alexander*, 74 Ga. 293, which was an action at law, it was held that one who entered into a contract during infancy might, upon arriving at majority, disaffirm the contract and recover property parted with by him, or its value, or damages for fraud practiced upon him in such transaction, without offering to rescind the contract or to return the consideration. The rule might be different if the infant was compelled to resort to a court of equity. See. *Thomason* v. *Phillips*, 73 *Ga.* 140.

6, 7. An infant who by permission of his parent or guardian, or by permission of the law, practices a profession or trade, or engages in any. business as an adult, is bound by all contracts connected with the occupation in which he is engaged. Civil Code, § 3650. One engaged as a "linter" in an oil-mill is not engaged in a profession or trade within the meaning of this section. In *Howard* v. *Simpkins*, 70 *Ga.* 322, 325, a mere clerk was held not to be engaged in a profession or trade; and the same reasoning would exclude from the operation of this section one occupying the position of a linter in an oil-mill. While such a person is, in a sense, engaged in a business, he is not engaged in a business within the meaning of this section of the code, which applies only where the infant is carrying on a business of his own. But even if the plaintiff could be properly considered as carrying on a business, there is no evidence that he was doing so with the permission of his parent. The mere fact that an infant is working and collecting the proceeds of his labor does not show permission by his parent for him to receive for his own that which in law belongs to the parent. Evidence that the parent knew that he was receiving the proceeds of his own labor might be sufficient to authorize an inference that permission had been granted for him to engage in the occupation, and receive for his own use the proceeds of his labor.

8. The motion for a new trial contains numerous grounds assigning error upon the failure of the judge to charge certain propositions of law claimed to be relevant to the case; the assignments of error in some cases being upon specific extracts from the charge, with a complaint that other propositions were not charged in connection therewith. Such assignments can not be considered.

See *Roberts* v. *State,* 114 *Ga.* 450.    Many, if not all, these assignments seek, however, to raise questions that are fully covered by the foregoing discussion, which was rendered necessary under the general grounds of the motion.    The evidence was conflicting on many material points, but there was evidence authorizing a finding that the master had failed in his duty to furnish the servant a safe place to work, that is, the place at which he was working was not safe when the seed-shaker, which was a part of the machinery and in another room, was allowed to become choked ; and a recovery was therefore authorized under the amendment to the petition.    There was no error in failing to submit to the jury the question as to whether the plaintiff was a volunteer in attempting to place the belt upon the shafting.    He testified positively that he did this under the instruction of Graves, the defendant's superintendent, and Graves admitted that he had authority to order the plaintiff to do this work if he had seen fit to exercise it, but testified that he did not remember whether he gave this order. A careful examination of his evidence shows that there is nothing in it which could be construed as a denial of what plaintiff testified.    The charge as a whole appears to have fairly submitted to the jury all of the controlling issues in the case ; and if any amplification had been desired on any of the points involved, they should have been made the subject of timely written requests. We see no reason for reversing the judgment.

*Judgment affirmed.    All the Justices concur.*