## 442. SOUTHERN STATES PORTLAND CEMENT CO. *v.* HELMS.

1. In a suit by a servant against the master, the petition should plainly and distinctly set forth the elements necessary to a recovery. Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion. A petition so drawn is good against demurrer.

(a) In such a petition, as to the element of the master's knowledge of the defect in the instrumentality causing the injury, if the facts alleged make a case where, by law, the duty of knowing of the defect is imposed upon the master, the pleader may, without subjecting his petition to successful attack by demurrer, charge in general terms that the master "knew or ought to have known" of the defect; *aliter,* where the facts alleged do not, as a matter of law, devolve this duty upon the master.

(b) Among the absolute duties of the master is that of making inspections for the discovery of defects and dangers in those instrumentalities within the range of which the servant is likely to come, in the discharge of his duties; hence, by law, the master ought to know of such defects as a reasonable inspection would disclose.

(c) The servant must allege and prove his lack of knowledge, both actual and constructive, of the defect; but this want of knowledge, especially in cases where the death of the servant has resulted, may be shown circumstantially.

(d) As a general rule, a servant is under no obligation to inspect the appliances about which he works, or that part of the plant by which his safety may be affected, for the purpose of discovering concealed dangers which would not be discovered by superficial observation.

(e) If the allegations of the petition show that the machinery furnished by the master was not reasonably safe for a servant operating it with reasonable care and diligence, the petition is not subject to demurrer on the ground that it is not also alleged that it was not equal in kind to that in general use.

(f) Sections 2611 and 2612 of the Civil Code are not statutory, in origin; they are not, and do not purport to be, exhaustive of the subject of the reciprocal liabilities and duties of master and servant; they are mere codifications of particular phases of the law as applied by the Supreme Court in certain reported cases, and, for the most part, rest on statements culled in those cases from text-books; and are therefore to be construed in connection with the entire general law on the subject.

2. An amendment to the petition which merely amplifies or varies the acts of negligence from which it is alleged an injury resulted is not subject to the objection that it sets forth a new and distinct·cause of action.

Action for damages, from city court of Polk county—Judge Irwin. March 25, 1907.

Submitted June 25,—Decided July 10, 1907.

The error assigned in this case is the overruling of a general and special demurrer to the plaintiff's petition. The petition, in substance, alleges: (1) The jurisdiction of the court over the person of the defendant. (2) That defendant has damaged plaintiff in the sum of ten thousand dollars. (3) That "petitioner is the wife of one Charles E. Helms, who was, on the 24th day of October, 1905, killed while engaged at his work as what is known as oiler, at the plant of defendant, where the defendant is engaged in the manufacture of cement, in said county." (4) That "her said husband was at work at said cement plant, and the only duty he had to perform under his contract of employment was to oil the machinery, which he was doing at the time he was killed." (5) That "it was not her husband's duty to watch and keep in repair, or to adjust any of the said machinery, or to examine the same at any time, or to observe or inspect it and note any misconstruction or disarrangement thereof; that he was incompetent to do so; which was known to the said defendant." (6) That "among the machinery of the defendant at said plant there is what is known as 'Tube Mill' number four, which is constructed and connected with and operated by a line of iron shafting, which rests upon a

cement wall and extends from an electric dynamo or motor, near said cement wall, across said wall to a cog wheel that is attached to the large drum or tube, in which the cement material is in some manner treated; that on top of said cement wall where the said shafting rests, there is a boxing or journal in which said shaft revolves; and on top of this boxing or journal are two places or small holes made to admit oil therein, and that this particular place and piece of machinery was being oiled by petitioner's husband at the time of his death." (7) That "there is an iron cuff or collar that is made in two pieces, that is fastened together on each of two sides of said shafting by bolts and set-screws. The said cuff or collar is made with a trench or groove in the outer circular edge thereof, evidently for the purpose of permitting the said cuff or collar to be fastened together and around said shafting by means of two iron bolts, and at the same time prevent said bolts and also the set-screw (which holds the cuff or collar in place) from protruding beyond the outer surface of the said cuff or collar, and, upon being properly constructed, would present a smooth and regular surface." (8) That "the set-screw was an iron or steel screw that went through the edge of the cuff or collar and into a slot or notch in said shafting to hold the said cuff or collar in its proper place. That if the said screw had been properly made, of the right size and length, it would have served its purpose perfectly, and the head of it would have been below the outer surface of the said cuff and down in the trench or groove in the said cuff. Said cuff was placed on said shaft just flush with the edge of the said cement wall on the side next to the dynamo, and this was the side of the wall from which plaintiff's husband had to approach the said oiling places to oil the said piece of machinery." (9) That "the said bolts holding the said cuff together were extended so far at each end as to be dangerous; for the reason that if any part of the clothing of ordinary kind worn by petitioner's husband happened to come into contact with the cuff while the machinery was in motion, the rapid revolving shaft would cause the ends of said bolts to catch the clothing." (10) That "the head of said set-screw protruded quite away beyond the edge of the said cuff, and that said shaft while in operation made about two hundred revolutions to the minute." (11) That "it was her husband's duty to oil said machinery when it was in motion; and that while

he was so doing on the date aforesaid, the head of the said set-screw and the ends of the said bolts in the said cuff or collar came in contact with his clothing, and the shaft, being operated by electricity, was rapidly revolving as aforesaid, and caught up his clothing which he had on, and held him by this means and forced his body around as the shaft revolved, and struck his head and other parts of his body against the said cement wall and other parts of said machinery, and in this manner caused his death." (12) That "it was negligence on the part of the defendant to have constructed said machinery as aforesaid, and in permitting it to so remain." (13) That "said machinery could have been made perfectly safe by an expenditure of not more than ten dollars—by placing guard-rails along the outside of said cement wall, just a few inches beyond the said cuff or collar, which would have prevented any injury or danger to petitioner's husband while in the discharge of his duty as oiler, and to others in going around said shaft and cuff. Petitioner alleges that the failure on the part of the said defendant to so place such guard-rails was negligence." (14) The age and earning capacity of petitioner's deceased husband is alleged.

To the original petition the defendant demurred on the following grounds: No cause of action is set forth; no liability against defendant is shown; no negligence rendering defendant liable is shown; it appears that the alleged injury was caused by the negligence of the deceased; it does not appear that the deceased could not have avoided the injury by exercise of proper care; it appears that the deceased had equal means with the master of observing the danger; there is no allegation that the master knew of the danger, or that the servant did not know of the danger or had not equal means with the master of knowing the danger. It also demurred specially to paragraphs 9 and 13 of the petition, "because it is not alleged that the construction of the machinery therein mentioned is not like that used in other plants of like nature and engaged in the same business, the defendant not being bound to furnish any certain particular contrivance. It also specially demurred to paragraph 10, in that it was not specific as to the distance the set-screw protruded. The plaintiff thereupon filed the following amendment, adding at the close of paragraph 7 the words: "It was the duty of the defendant so to construct its machinery as to make its operation attended with no unusual danger

to the said husband of the plaintiff, Charles E. Helms, while performing his duties in connection therewith. This was not done as defendant was bound to do, but, instead of the said cuff being properly put together, around the shaft in the manner it was made and intended should be, it was unskilfully and carelessly done; for the reason that one of the iron or steel bolts that held the two pieces of the collar together was too long, and protruded beyond the outer surface of the collar from three eighths to one half inch; that plaintiff's husband had only been at work at the said place in the capacity of oiler but a few days; and the said machinery being in motion night and day, he had no opportunity of knowing its improper manner of construction; and that he had no notice given him of it, and, not being a skilled mechanic, did not know how it should be constructed; that plaintiff's said husband could not by ordinary diligence have discovered the defect and danger; that the defendant had a mechanic whose duty it was to see that the machinery was properly constructed, and it was not plaintiff's husband's duty; besides, it was the duty of the defendant to properly construct and keep in repair all its machinery, and to keep it in a reasonably safe condition; that defendant knew or ought to have known of the defective condition of the said machinery above described." To the amended petition the demurrer was renewed, the following additional grounds being added: As to the statement in paragraph 5, that deceased "was incompetent to do so, which was known to the said defendant," on the ground that the allegation is a mere conclusion of the pleader and states no facts on which said allegation is based; as to paragraph 2, on the same ground; as to the amendment to paragraph 7, on the ground that it is confused, mixed, and not clear in meaning; as to the statement in this amendment that "it was the duty of the defendant so to construct its machinery as to make its operation attended with no unusual danger to the deceased," because it states a mere conclusion, with no facts upon which to predicate it; also as to that portion of the original petition which states that deceased had been at work as an oiler but a few days, on the ground that the number of days is not definitely stated; also as to the statement in the amendment, "that plaintiff's said husband could not by ordinary diligence have discovered the defect and danger," because it states a mere conclusion of the pleader; and as to the statement.

"that defendant knew or ought to have known of the defective con-dition," on the same ground.  There were other grounds, but all of them are of substantially the same nature as these above set out. Upon the amendment being made, the court struck paragraph 13 of the petition and overruled the demurrer; and the defendant ex-cepts to this judgment.  It also complains that the court erred in allowing the amendment.

*Blance & Tison,* for plaintiff in error.

*Janes & Hutchens,* contra.

POWELL, J.  1. In the case of *Cedartown Cotton & Export Co. v. Miles,* ante, 79, 58 S. E. 289, this court undertook to discuss and to elaborate the form and nature of a petition for the recovery by a servant against his master of damages for personal injuries re-ceived in the course of the employment.  The petition in this case seems to come up to the standard there set.  In fact, if the pleader in this case had had the opinion just referred to before him, he could hardly have followed it with greater accuracy.  The nature of the servant's employment, of the instrumentality causing the in-jury, and of the defect which was the immediate cause, as well as the relation existing between these things as bringing about an ac-tionable wrong, are carefully and definitely set forth.  Matters of fact are set forth as such, while those matters of which the court will take judicial notice are pleaded as legal conclusion; which is unobjectionable.

The petition states that the deceased was employed as an oiler, and connects the employment with the injury, by alleging that in pursuance of the performance of his duty he was engaged at the time he was hurt, in oiling the defective pieces of the machinery. The duty of the defendant to furnish reasonably safe machinery is alleged in general terms; and, as said before, this is allowable under the rules of good pleading.  The instrumentality is defi-nitely described, and the definiteness of description increases, as in-deed it should, as it touches the questions of the relation of the instrumentality to the duties of the servant, to the specific mode of the injury, to the exact nature of the defect, to the negligence of the master and the lack of contributory negligence on the part of the servant; for by alleging the presence of the journal and the oil holes therein, it shows the relation of the instrumentality to the duties of the servant; by alleging the presence of a projecting set-

screw capable of catching clothing, it shows the relation of the in-strumentality to the exact mode of the injury; by alleging the pres-ence of this projecting set-screw at a place where in the ordinary construction and arrangement of the machine it would not be ex-pected to project, because of the groove into which it should fit snugly, it shows the exact nature of the defect; and from these same things the negligence of the master appears; and by showing the speed at which the shaft and collar revolved, it negatives the contributory negligence of the servant. The defect is set forth with certainty, and from the facts stated it appears that it was latent; also that it was the proximate cause of the injury.

As to the element of the master's knowledge, the allegation is "that the defendant knew or ought to have known of the defective condition of the machinery above described." Taken in connection with the other allegations of the petition, this is sufficient. As was said in the *Miles* case, supra, "if constructive knowledge be charged to the master, and the facts stated in the petition make a case where by law the duty of knowing is imposed upon the master, the resulting legal conclusion 'that he ought to have known' is not subject to objection." Among the absolute non-delegable du-ties of the master are those of furnishing reasonably safe ma-chinery, and of making inspection for the discovery of defects in those instrumentalities within the range of which the servant is expected to come. *Dennis* v. *Schofield Co.,* 1 *Ga. App.* 489, 57 S. E. 925; *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 610 (3), 56 S. E. 839; *Southern Cotton Oil Co.* v. *Dukes,* 121 *Ga.* 791, 49 S. E. 788; *Babcock* v. *Johnson,* 120 *Ga.* 1034 (6), 48 S. E. 438; *McDonnell* v. *Central Ry. Co.,* 118 *Ga.* 86, 44 S. E. 840. Hence, by law, the master ought to know of such defects; and it therefore follows that, the preliminary facts necessary to raise the duty having been set forth in detail, the statement of the legal conclusion is unob-jectionable. *Pierce* v. *Seaboard Air-Line Ry.,* 122 *Ga.* 664, 50 S. E. 468.

The servant's lack of actual knowledge is not directly alleged, but this element is inferentially shown from the facts stated; and in the absence of a more specific demurrer, pointing out the fact that this is pleaded inferentially, and not directly, we shall hold the petition sufficient. "Demurrer, being a critic, should itself be free from imperfections." Special demurrer must put its finger

upon the exact point of weakness. The allegations are: "That plaintiff's husband had only been at work at the said place in the capacity of an oiler but a few days; and the said machinery being in motion night and day, he had no opportunity of knowing of the improper manner of construction; and that he had no notice given him of it;" and "could not by ordinary diligence have discovered the defect and danger;" and this, in connection with the fact that the shaft revolved at the rate of two hundred revolutions per minute, which would naturally render the defect ordinarily unobservable, makes a circumstantial case of lack of knowledge. As the Supreme Court says, through Justice Cobb, in the *McDonnell* case, 118 *Ga.* 91, 44 S. E. 843: "Want of knowledge on the part of the servant as to the defects in the machinery may be shown by circumstances as well as by direct evidence. Of course, in a case like the present, where the servant loses his life, it is impossible in a suit by his widow to show by direct evidence this want of knowledge. If the circumstances are such that it can be reasonably inferred that the servant did not have knowledge, this inference from the facts sufficiently establishes want of knowledge." As a nicety of pleading, it is better to allege the lack of actual knowledge directly, even though the proof be circumstantial. However, in the light of what we have just said, we hold that the petition sufficiently alleges a lack both of actual and of constructive knowledge. As to the element of constructive knowledge, the statement in *Southern Cotton Oil Co.* v. *Dukes,* 121 *Ga.* 787, 40 S. E. 788, is pertinent: "As a general rule, a servant is under no obligation to inspect the appliances about which he works, or that part of the plant by which his safety may be affected, for the purpose of discovering concealed dangers which would not be disclosed by superficial observation." See also *Southern Cotton Oil Co.* v. *Gladman,* 1 *Ga. App.* 259, 58 S. E. 249.

Since in this case the servant met his death not from the obvious danger of the rapidly-revolving shaft, but from the concealed danger of a projecting set-screw, the case is easily distinguishable from the case of *Commercial Guano Co.* v. *Neather,* 114 *Ga.* 416, 40 S. E. 299, and *McDaniel* v. *Acme Brewing Co.,* 113 *Ga.* 80, 38 S. E. 404. It must be remembered too, in this case, that the projecting set-screw was located in a place where a servant relying upon the prudence of the master would not ordinarily anticipate

it. Indeed, while the construction of the machine seems to have necessitated the presence of a set-screw in this collar, yet since it was also necessary to oil the adjoining bearing, the maker of the machine, obviously anticipating the danger that would exist by leaving the head of the screw exposed, had arranged a groove in the collar, into which the set-screw might fit without protruding. The negligence consisted not in the use of a set-screw, but in leaving it protruding, instead of protecting it by placing it down within the groove. See, in this connection, Labatt, M. & S. §77, and cases cited in the footnote.

The objection that the petition does not allege that the machinery was not equal in kind to that in general use is not well taken. In the first place this fact does inferentially, if not absolutely, appear from the allegations made. Also, under the Civil Code, §2611, the master is bound to exercise ordinary care "in furnishing machinery equal in kind to that in general use, *and* reasonably safe for all persons who operate it with ordinary care and diligence." Taken thus conjunctively, these two clauses are measurably accurate in stating the rule upon this subject. In cases involving the law of master and servant we must not forget, in applying the two sections of our Civil Code, §§2611 and 2612, that they are not statutory in origin; they are mere codifications of particular phases of the law as applied by the Supreme Court in certain reported cases; and for the most part rest on statements culled in these cases from Wood's Law of Master and Servant. As we said in *King* v. *Seaboard Air-Line Ry.,* 1 *Ga. App.* 88, 58 S. E. 252, codification has given them no element of exhaustiveness, but the whole law of master and servant exists just as it did before these sections appeared in our code; and there are many phases of this branch of the law not covered by these two code sections. We look to the general law as limiting, explaining, and extending their meaning. The fact that the machinery furnished by the master is equal in kind to that in general use is a circumstance tending to show that he has exercised ordinary care in that respect; but after all, there is the further test that it must be reasonably safe for all persons who operate it with ordinary care.

With the exceptions of some regrettable lack of unity in form and order of arrangement, a rhetorical rather than a substantial blemish, the petition is well drawn; as amended it sets out a clear,

definite cause of action; and the court properly overruled the demurrer.

2. The amendment to the petition was properly allowed, over the objection that it introduced a new cause of action. *King* v. *Seaboard Air-Line Ry.*, supra, and cases therein cited.

*Judgment affirmed.*