## 12618.  CENTRAL OF GEORGIA RAILWAY COMPANY *v.* LINDSEY.

JENKINS, P. J.  1.  "A servant assumes the ordinary risks of his employment."  Civil Code (1910), § 3131.

(*a*) In an action for injury to a servant, resulting from his compliance with a direct and specific command of the master, given with reference to the manner, means, or instrumentality by which the master's work is to be performed, it is a question for the jury whether the risk involved in obeying the order is an ordinary hazard such as was assumed by virtue of the servant's employment, or whether under the existing circumstances the command was a negligent one. Where, under the facts and circumstances attending the issuance of such an order, the command is in fact a negligent one,— that is, where the circumstances are such that the master has either actual or constructive knowledge that a compliance with the command will be attended with unusual and unnecessary peril,— the danger incurred by the servant in obeying the order will not be taken to have been assumed by virtue of the employment, since "a servant is bound to obey the order of his master unless the command includes a violation of the law, or the act required is so obviously dangerous that no person of ordinary prudence would undertake to perform it." *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609, 616 (56 S. E. 839, 842, 10 L. R. A. (N. S.) 772); *Seaboard Air-Line Ry.* v. *Bishop,* 132 *Ga.* 37, 40 (3) (63 S. E. 785); *Whiters* v. *Mallory Steamship Co.,* 23 *Ga. App.* 47 (97 S. E. 453); Labatt on Master & Servant (2d ed.), § 1362.

(*b*) Even where under the circumstances the master neither has nor is chargeable with knowledge of the unusual and unnecessary risk involved in a compliance with such a command, and consequently the command would not ordinarily be taken to be a negligent one, yet where the order is accompanied with an express or plainly implied assurance of safety to the servant in a compliance therewith, the law

implies a quasi new agreement to have been made whereby the master relieves the servant of his former assumption, and, in an action by the servant for injuries thus occasioned, the master is not entitled to rely upon the servant's assumption of risk as a defense. *Bush* v. *West Yellow Pine Co.*, 2 *Ga. App.* 295 (58 S. E. 529); *Cherokee Brick Co.* v. *Hampton*, 16 *Ga. App.* 53 (84 S. E. 328).

2. A servant is bound to exercise ordinary care and skill in protecting himself from danger (Civil Code of 1910, § 3131); and this is true whether he be acting on his own initiative or under the direct command of his master. "If the order was negligent and the servant knew of the peril of complying with it, or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, then he can not recover for an injury received in complying with the order." *Southern Ry. Co.* v. *Taylor*, 137 *Ga.* 704 (1 *a*) (73 S. E. 1055); *Hightower* v. *Southern Ry. Co.*, 146 *Ga.* 279 (2), 281 (91 S. E. 52, L. R. A. 1917C, 481). But while it is thus true that the *standard* of diligence to which the servant is amenable, and under which he is ever required to exercise ordinary care, remains invariable (*Central R. Co.* v. *Ryles*, 84 *Ga.* 420 (1), 11 S. E. 499; *Harris* v. *Central R.*, 78 *Ga.* 525, 526 (6), 536, 3 S. E. 355; *Central of Ga. Ry. Co.* v. *Hartley*, 25 *Ga. App.* 110, 112 (6), 103 S. E. 259), and he is not excused for actual negligence by reason of the fact that the injury results from his obedience to such a direct and specific command, when it appears that he failed to exercise ordinary care, or that the risk was obvious, or that he knew or had equal means with the master of knowing of the unusual peril involved in a compliance with the command, it is nevertheless true that what in any given case amounts to "ordinary care" is to be de-determined by the jury in the light of all the surrounding facts and circumstances existing at the time of the injury, including the issuance of the command by the master to the servant. *Henderson* v. *Hines*, 26 *Ga. App.* 334 (2) (106 S. E. 197); Labatt on Master & Servant (2d ed.), 3929 et seq.; 18 R. C. L. 655. Thus, except in cases where the unusual and unnecessary danger involved in a compliance with a direct and specific command of the master is plainly apparent, or where the servant has actual knowledge of such danger, the fact that the servant was injured while acting in compliance with such a command can properly be shown as a circumstance throwing light upon the ultimate question respecting his diligence and as tending to excuse his conduct, which might otherwise be adjudged as evincing a lack of ordinary care. Especially is this true where the master's command is accompanied by an assurance of safety to the servant. This is true for the reason that the servant does not always have, nor in all cases could he be presumed to have, "equal means with the master of knowing of the peril" (*Southern Ry. Co.* v. *Taylor*, supra); for while it is true that a servant is presumed to know of the existence of the ordinary natural laws of universal application (*Williams* v. *Atlantic Coast Line R. Co.*, 18 *Ga. App.* 117), still what is commonly referred to as the "doctrine of skill" frequently makes the knowledge implied against the master with reference to the conduct of his business superior to that implied against the servant (*Beard* v. *Georgian Mfg. Co.*, 8 *Ga. App.* 618 (2), 70 S. E.

57; *Burton* v. *Wadley Southern Ry. Co.*, 25 *Ga. App.* 599, 603, 604, 103 S. E. 881; *Decatur Lumber Co.* v. *Fulton*, 26 *Ga. App.* 499 (3), 106 S. E. 609), and since, " as a general rule, a servant is under no obligation to inspect the appliances about which he works or that part of the plant by which his safety may be affected, for the purpose of discovering concealed dangers which would not be disclosed by superficial observation " (*Southern Cotton Oil Co.* v. *Dukes*, 121 *Ga.* 787 (2), 49 S. E. 788; *Decatur Lumber Co.* v. *Fulton*, supra); and finally for the reason that it is ordinarily true that " a servant is bound to obey the order of his master unless the command includes a violation of the law, or the act required is so obviously dangerous that no person of ordinary prudence would undertake to perform it " (*Moore* v. *Dublin Cotton Mills*, supra), and it is one of the absolute, continuous, and non-assignable duties of the master to refrain from giving negligent orders. *Columbus Mfg. Co.* v. *Gray*, 9 *Ga. App.* 738 (2) (72 S. E. 273); *Cherokee Brick Co.* v. *Hampton*, 16 *Ga. App.* 53, 54 (5), 63 (84 S. E. 328); *International Cotton Mills* v. *Webb*, 22 *Ga. App.* 309 (2) (96 S. E. 16).

3. Applying to the facts in the instant case the principles of law set forth in the two preceding divisions of the syllabus, it was for the jury to say: (1) whether the risk incurred by the plaintiff in obeying the alleged command of the master, accompanied by his alleged assurance of safety, subjected him to unusual and unnecessary hazards, or whether the danger to which he became thus exposed was merely an ordinary risk such as was assumed by virtue of his employment; and (2) whether, under all the facts and circumstances attending the injury, including the giving of such command and assurance, the servant was guilty of a failure to exercise ordinary care in his compliance or manner of compliance therewith. The case differs in its facts from those reported in *Louisville & Nashville R. Co.* v. *Dunn*, 21 *Ga. App.* 379 (94 S. E. 661). There the plaintiff was a man of five years' experience in the particular kind of work on which he was engaged at the time of the injury, and, in complying with the alleged command of the master, merely subjected himself to the ordinary danger incident to the shifting character of the particular work in which he was thus engaged, unless it were the additional but obvious danger arising from the fact that the old " bent " which he was seeking to loosen and remove had not been braced to the new " bent." Here the plaintiff, although a carpenter, had very little experience as to any sort of bridge work, and none at all in the particular work in which he was engaged at the time of the injury. Thus, even assuming that he knew or should have known that in loosening the old " bent " it should have been first braced to the new " bent," it cannot be said that the peril to which he thus exposed himself was obvious, since it appears that the old " bent " had in point of fact been previously braced by tying it to the new bent with ropes, but not in the usual and customary manner of nailing two pieces of scantling from it to the new " bent." It cannot, therefore, be said as a matter of law that the plaintiff, when acting on the direct and specific order of the defendant's representative, and under his assurance of safety, must necessarily have had equal means with the master of knowing of the danger arising from such alleged improper and insuffi-

cient bracing, and consequently it cannot be said that the risk attendant upon his obeying the command of the master's representative, accompanied by his assurance of safety, was necessarily such as was assumed by virtue of his employment, or that, under all the circumstaces surrounding the injury, a compliance with the order must necessarily be taken to be a failure on the plaintiff's part to exercise ordinary care.

4. The judge did not abuse his discretion in refusing to grant the defendant's motion for a continuance on account of surprise occasioned by the plaintiff's amendment to the petition. "A motion to continue upon the ground that a party is unprepared to meet the allegations of his antagonist should be overruled, unless a good reason why the movant is unprepared is shown, and it is made to appear that the delay is necessary to remove the cause of the movant's disadvantage and will likely be effective for that purpose." *Deen* v. *Wheeler*, 7 *Ga. App.* 507 (67 S. E. 212); *Hyer* v. *Holmes*, 12 *Ga. App.* 837 (6) (79 S. E. 58); *Ga., Fla. & Ala. Ry. Co.* v. *Sasser*, 4 *Ga. App.* 276 (2) (61 S. E. 505); *Mayor &c. of Cordele* v. *Williams*, 7 *Ga. App.* 445 (2) (67 S. E. 116).

5. The court did not fail to charge the doctrine of the assumption of risk as a defense, available under the Federal employer's liability act. The jury were instructed that "the general Federal employer's liability act does not take away from the defendant the defense that the plaintiff was injured by reason of one of the risks of his employment;" also that "a servant assumes the ordinary risk of his employment and is bound to exercise his own skill and diligence to protect himself."

6. Exception is taken to the charge of the court relative to the rule given, under the Federal employer's liability act, for diminution of damages on account of any contributory negligence on the part of the defendant. The court instructed the jury as follows: "But if it [the injury] was brought [about] partly by the negligence of Mr. Smith or Mr. Lindsey, and partly by the negligence of the plaintiff in this case, then when you go to your jury-room, in the event you reach the conclusion the plaintiff sustained damage, it would be proper for the jury to reduce the plaintiff's damages in proportion to the amount of negligence attributable to the plaintiff and to the defendant in this case." The charge does not constitute reversible error for the reason assigned. The exception taken thereto is that "This charge erroneously instructed the jury that the contributory negligence of the employee must be compared with the negligence of the defendant alone. This was error. The defendant says that the true rule under the Federal employer's liability act is that where the causal negligence is partly attributable to the plaintiff and partly to the defendant, the plaintiff shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable to both, and the court erred in not so charging the true rule and in charging the incorrect rule set out in this charge." The contention is that, while under the Georgia law the rule of diminution of damages is that the jury shall compare the negligence of the defendant with that of the plaintiff, under the Federal employer's liability act the plaintiff is limited in his recovery to an amount bear-

ing the same relation to the full amount of damages as the negligence of the defendant bears to the entire negligence attributable to both defendant and plaintiff. Section 3 of the act of Congress approved April 22, 1908, known as the Federal employer's liability act, provides as follows: " In all actions hereafter brought against any such common carrier by railroad under and by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or when such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The State employer's liability act (Civil Code of 1910, § 2783) is almost identical in terms, and provides that " the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The ruling by the Supreme Court of the United States in Norfolk & Western Ry. Co. *v.* Earnest. 229 U. S. 114 (33 Sup. Ct. 654, Ann. Cas. 1914C, 172), construing the provision of the Federal act, that " tne damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," as meaning that " where the causal negligence is partly attributable to him and partly attributable to the carrier, he shall not recover full damages, but only a proportionate amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both," is but an amplification of the statute rule; and a charge giving the rule in terms substantially identical with the statute has been several times upheld by that court. Norfolk & Western Ry. Co. *v.* Earnest, supra; Illinois Central R. Co. *v.* Skaggs, 240 U. S. 73 (36 Sup. Ct. 249, 60 L. ed. 528). In the instant case, if there be any inaccuracy at all, the harmful effect could inure only to the benefit of the defendant, since the only possible misconstruction would be that the damages should be reduced in proportion to the amount of negligence attributable to both plaintiff and defendant.

7. The amount of the verdict ($10,000) cannot, under the evidence, be adjudged by this court to be excessive. The judge did not abuse his discretion in refusing to declare a mistrial on account of the remarks of plaintiff's counsel. The charge, taken as a whole, was full and fair; and for no reason assigned would this court feel justified in setting aside the verdict and judgment.

*Judgment affirmed. Stephens and Hill, JJ., concur.*

DECIDED FEBRUARY 10, 1922.

Action for damages; from Jones superior court — Judge Park. May 19, 1921.

Application for certiorari was denied by the Supreme Court.

As to the motion that a mistrial be declared the motion for a new trial states: that " during the argument plaintiff's counsel, in commenting upon the failure of the defendant to introduce evidence, stated: ' This company (referring to defendant) can get witnesses from Washington or anywhere else in the United States,

and has its lawyers hired by the year.' Defendant's counsel moved that the court grant a mistrial, upon the ground that the remarks of the plaintiff's counsel to the jury were inflammatory and were not authorized by the evidence and were not a correct statement of the facts. The court then ruled as follows. 'I will instruct the jury, in my general charge, that they should not be governed by anything except the law as given in charge by the court, and the evidence as delivered on the stand, and any reasonable deductions therefrom. With this statement you can go ahead and confine yourselves to the law and evidence and reasonable deductions therefrom.' And thereupon the court permitted the plaintiff's counsel to continue his argument, without rebuking plaintiff's counsel, and. refused to grant a mistrial."

From the evidence it appeared that the plaintiff was a carpenter, 29 years old, earning $1.75 a day, in a bridge gang of the railway company, and, while he was at work on an insecurely braced bent of a trestle, the bent moved and he lost his balance and fell some distance, and his head was injured, his hip was knocked out of its socket and crushed, and one leg became "dead" and some inches shorter than the other, and he required the support of crutches or a stick. It was testified that he was capable of making as a carpenter from $3 to $3.50 a day.

*Harris, Harris & Witman, J. B. Jackson,* for plaintiff in error.
*Martin & Martin, E. W. Martin, F. Holmes Johnson,* contra.