### EMANUEL v. GEORGIA & FLORIDA RAILWAY COMPANY.

The petition set forth a cause of action, and was not subject to general demurrer.
OCTOBER 1, 1914.

Action for damages. Before Judge Rawlings. Emanuel superior court. July 16, 1913.

Emanuel sued the Georgia and Florida Railway Company for damages, alleging, among other things, as follows: His duties were only to labor as a section-hand. The hands were carried to and from work on a gasoline motor-car. It was no part of his duty to operate, manage, inspect, repair, or care for the car. He was ignorant of machinery, and could not have discovered a defect in it by inspection. On the day in question the plaintiff was being transported from his place of work into Oak Park. At a point about three hundred yards north of the depot the car stopped and the engines ceased to work. The foreman of the gang ordered the plaintiff to alight and help push the car forward, "being told that" this would put the engines in motion. The plaintiff obeyed. Seizing a rod at the left side and near the front of the car, and walking on the ends of the cross-ties, he assisted in pushing the car as directed. After pushing the car forward a short distance, the engines "popped" and threw the car forward with great force and speed, and the ends of the cross-ties upon which the plaintiff was

walking gave way under his feet. The quick movement of the car jerked and threw him in front of it. He fell on his back on the rail in front of the car, which ran upon and injured him. The defendant was negligent in furnishing a defective motor-car for the transportation of the section-gang. It was not working properly. The engines constantly ceased, action, and the men were compelled to walk and tug it into the station. Immediately after the injury to the plaintiff the defendant was forced to abandon the use of the car, on account of the defects. It was negligent also in allowing decayed cross-ties to remain under the track. These conditions had existed for several days before the injury, and in the exercise of ordinary care the defendant must or should have known thereof. The plaintiff was free from fault, had no knowledge of the condition of the car, and had not been warned thereof; nor was he aware of the rotten condition of the cross-ties.

The defendant filed a general demurrer, which was sustained, and the plaintiff excepted.

*Walter F. Grey* and *T. N. Brown,* for plaintiff.
*Saffold & Jordan,* for defendant.

HILL, J. (After stating the foregoing facts.) The petition was dismissed on general demurrer. It was contended that the plaintiff assumed the risk of the danger arising from the defective motor-car, and that this appeared upon the face of the petition. By the Civil Code (1910), § 2782, it is declared: "Every common carrier by railroad shall be liable in damages to any person suffering injury while he is employed by such carrier, or, in case of death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband, or child, or children of such employee, . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defects or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment;" provided that no recovery can be had "if the person killed or injured brought about his death or injury by his own carelessness amounting to a failure to exercise ordinary care, or if he, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence." The next section provides that the fact that the employee may have been guilty of contributory negligence, not amounting to a failure

to exercise ordinary care, shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided that the employee shall not be held to have been guilty of contributory negligence in any case where the violation by the common carrier of any statute enacted for the safety of employees contributes to the injury or death of such employee. The next section reads as follows: "In any action brought against any common carrier under and by virtue of any of the provisions of the two preceding sections, to recover damages for injuries to or the death of any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of the employees contributed to the injury or death of such employee."

In dealing with the doctrine of the assumption of risks by an employee, the difference between ordinary and extraordinary risks must not be overlooked. Ordinary risks are usually described as being those incident to the business, and do not imply the result of the master's negligence. The expression, "extraordinary risks," is generally used to describe risks arising from the negligence of the master, and they are generally held not to be assumed unless they are known or obvious. 2 Bailey, Per. Inj. (2d ed.), § 356. Different views have been advanced by different authorities as to the basis of the doctrine of assumption of risks by an employee. Many of them declare that it is based upon the contract of employment, and that impliedly a servant agrees to assume not only the risks of ordinary dangers incident to the business, without negligence on the part of the master, but also those arising from the negligence of the master, after they have become known to the servant or are obvious to him; and that if he nevertheless continues to perform the service in view of the risk thus existing, at least without promise of correction, or other modifying circumstances, he can not recover for an injury arising therefrom. Other authorities contend that the doctrine of assumption of risks, at least so far as the risk arises from negligence on the part of the master, is based on the maxim "volenti non fit injuria," which declares in substance that he who consents to an act will not be heard to claim that he is wronged by it. Still others treat the action of the servant in remaining in the

service, with knowledge of the negligence of the master and its attendant risk, as constituting an independent act of waiver. And some cases are difficult to classify at all. We need not stop to discuss these contentions; nor need we deal with the abolition of the fellow-servant doctrine. The exact questions here presented are, whether, under the railroad employer's liability act of this State, the doctrine of assumption of risks as to a defective machine, such as a motor-car, remains of force as a defense to the company, except in cases where the violation by the company of a statute enacted for the safety of the employees contributes to the injury or death of the employee; and, if so, whether the allegations of the petition in the present case show such an assumption of the risk, or such negligence on the part of the plaintiff, as to prevent a recovery by him.

It might be contended with some force that the broad language employed in the section of the statute first above mentioned was such as to exclude the doctrine of the assumption of risks. But as the legislature, in a later section, has expressly provided that the employee shall not be held to have assumed the risks of his employment in any case where the violation by the common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee, it would seem that, as to defective machinery and the like, the defense of assumption of risks remains open except in the case provided for. This has been held by the Supreme Court of the United States, in construing the Federal employer's liability act of 1908, which is quite similar to the act of the legislature of Georgia of 1909, codified in the sections already cited. Seaboard Air-Line Ry. *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 635). See also: Barker *v.* Kansas City &c. Ry. Co., 88 Kan. 767 (129 Pac. 1151, 43 L. R. A. (N. S.) 1121); Freeman *v.* Powers (Tex. Civ. App.), 144 S. W. 1033. In Corley *v.* North Car. R. Co., 128 N. C. 534 (39 S. E. 43, 57 L. R. A. 817), the North Carolina employer's liability act was held to exclude the doctrine of assumption of risks arising from the negligence of the master in furnishing defective machinery or appliances. But that statute not only contained a general statement of a right by an employee of a railroad to recover for an injury arising from such a defect, but also declared that any contract or agreement, express or implied, made by any employee of such a company to waive the benefit of the section of the act declaring the general right of recovery should be

null and void. It contained no clause similar to the 4th section of the Federal employer's liability act of 1908, or the like provision in our Civil Code of 1910, § 2784.

Assuming that the statute of this State does not affect the doctrine of assumption of risks as to defective machinery furnished by a railroad company, except where there is a violation of a statutory duty, still the established rule is that if a risk arising from a master's negligence during the service is assumed by the servant, the danger must be known by the servant or be such as to be obvious to a man of ordinary prudence; and where the theory of implied contract as the basis of the doctrine of assumed risks prevails, as in this State (*Howard* v. *Central Ry. Co.*, 138 *Ga.* 537 (3), 75 S. E. 624; *Brown* v. *Rome Machine &c. Co.*, 5 *Ga. App.* 142, 62 S. E. 720), the servant must choose whether he will continue in the employment subject to such risks, so as to impliedly attach it as an incident to his employment or to waive the liability of the master. We need not stop to mention the exception in regard to liability of a railroad to a servant for injury arising from the negligence of a fellow servant, which is not here involved. In Seaboard Air-Line Ry. Co. *v.* Horton, supra, Mr. Justice Pitney said: "Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. . . When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified

for its performance, the employee, relying upon the promise, does not assume the risks, unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise. . . But by the common law, with respect to the assumption by the employee of the risk of injuries attributable to defects due to the employer's negligence, when known and appreciated by the employee, and not made the subject of objection or complaint by him, it is quite immaterial whether the defect existed when the appliance was first placed in his charge, or subsequently arose."

Can it be declared in this case, as matter of law, that the plaintiff had assumed the risk? The plaintiff alleged, that the company furnished a car to transport the section-hands to and from their work; that it was defective; that this defect was not known to the plaintiff; that he was ignorant of machinery, and could not have discovered the defect by examination; that it was no part of his duty to manage, inspect, or repair the motor-car; that the cross-ties were rotten at the place where he was instructed to assist in pushing the car; that he was not aware of this, and was free from fault; but that the conditions had existed several days before the injury, and the defendant knew or could have known of them by the exercise of ordinary care. If these things are true (and they are admitted on general demurrer), it can not be declared as matter of law that the plaintiff was debarred from recovering on the ground that he had assumed the risk. He expressly denied that he knew of the risk, or that it was any part of his duty to examine the car, or that he could have discovered the defect by inspection, on account of his ignorance of machinery. He thus negatived both knowledge on his part and the obvious character of the danger, or equal opportunity with the master for knowing of the danger. It was the duty of the master to exercise ordinary care to furnish safe machinery. If ordinary care required inspection to discover the defects and keep the machinery in good condition, the duty of inspection would fall on the master and not on the servant, unless he was one who was required to inspect. It can not be said that the plaintiff had equal opportunity with the master for knowing the defective and dangerous condition of the car. The mere allegations that the car was not working properly, that the engine would constantly cease action, and that the men were compelled to walk and tug the car

into the station (apparently for several days) did not show knowledge of the danger which the plaintiff encountered when, on this occasion, the "engines popped" and threw the car forward with great force and speed. It did not appear that this had ever happened before, or that the plaintiff had any reason to know of such a danger. If we construe the pleadings most strongly against the pleader, so as to show knowledge that he had seen the car stop and have to be pulled into the station, this alone does not show knowledge of the probable conduct of the refractory car and its motor on this occasion, and the danger thereof, so as to make it an assumed risk as matter of law. Neither can it be declared as matter of law that he was wanting in ordinary care. Not every employee who uses a machine is held to the duty of inspecting it or knowing its dangers unless obvious. *Central Railroad* v. *Haslett,* 74 *Ga.* 59; *McDonnell* v. *Central Ry. Co.,* 118 *Ga.* 86 (44 S. E. 840). Cases involving unquestionably open and obvious dangers, or those in which it was the duty of the employee to inspect or keep safe the tools, machinery, or tracks, so that he represented the master in that respect, and thus, if there was negligence on the part of the master in this respect, it involved negligence on the part of the employee also, or, if he was diligent, the master was also diligent, are not in point. In *Johnson* v. *Western & Atlantic Railroad Co.,* 55 *Ga.* 133, one ground of alleged negligence in the defendant was the furnishing of an old frail hand-car, nearly worn out, and with the edges of the platform worn off to a steep bevel. An iron bar loaded on this car rolled from it and injured the plaintiff. He testified, that he had been working with it for six months; that it was an old concern, badly worn off at the edges when he went on the road, and continued getting worse every day; and that they used it for hauling cross-ties and iron rails all the time, but he could see that it was getting worse and worse while he was at work. It was held that this would bar a recovery, whether on the ground of negligence or assumption of risk was not stated. In *Central R. &c. Co.* v. *Kenney,* 58 *Ga.* 485, the injured employee was a section-master in control of a hand-car, and had constantly used hand-cars. He knew of the shallow flange of that in use. A wheel of the car had become displaced on the same day, and he had corrected it to his satisfaction. (See the same case in the 64 *Ga.* 100, and the approval of the dissenting opinion in *Central R.* v. *Haslett,* 74 *Ga.*

66.) In *Baker* v. *W. & A. R. Co., 68 Ga.* 699, the plaintiff testified that he was using a cleaver which had been battered down almost to the eye, and a sledge-hammer with broken edges and uneven surface, to cut an iron bar, and he knew at the time that it was more dangerous than if the surface had been even. The stroke of the hammer caused a small piece of iron or steel to fly from the cleaver and strike him in the eye. A charge to the effect that if the plaintiff knew of the defective condition of the tools, in using them "he is not free from negligence," was affirmed, putting the ruling on the doctrine of negligence, not that of assumption of risks. In *Atlanta &c. Air-Line Ry.* v. *Ray, 70 Ga.* 674, the case was expressly made to turn on the negligence of the employee, not on the assumption of the risk. In *Central Railroad* v. *Haslett,* supra, and in *Western & Atlantic R. Co.* v. *Bradford,* 113 *Ga.* 276 (38 S. E. 823), the test applied was that laid down in the Civil Code (1910), §§ 3130, 3131; and it was held that under the evidence the employee was wanting in ordinary care in not discovering that a knot in a rope used by him and others in connection with a crane had become worn so as to slip through the eye of a hook. In *W. & A. R. Co.* v. *Moran,* 116 *Ga.* 441 (42 S. E. 737), the plaintiff was riding on the front end of a rail which was loaded on a hand-car. He had been warned that the rails could not be safely carried as they were placed, but insisted that it could be done. The axle of the car had been sprung, making the car "wabble" as it ran. The employee had full knowledge of this defect in the car, which had existed for a month or six weeks, and had commented on it.

That the plaintiff in the present case was a track-hand carried to and from the places where he was to work did not charge him with knowledge of the condition of the cross-ties at intervening places in the road over which he passed in being transported to and fro. But it may be doubted whether there is a duty on the part of a railroad company to maintain sound cross-ties on its main line for its employees to walk upon, or whether failure to do so ordinarily constitutes negligence as to such employees. *East Tenn. &c. Ry. Co.* v. *Reynolds,* 93 *Ga.* 570 (20 S. E. 70).

From what has been said it follows that it was error to dismiss the petition upon general demurrer.

*Judgment reversed. All the Justices concur, except*

EVANS, P. J., and ATKINSON, J., dissenting. We think it clear from the plaintiff's allegations that he knew that the gasoline motor was not properly working, that it would constantly cease action, and that he and other members of the section-gang would have to tug the car to the station. He was told that pushing the car forward would put the motor in motion. With this knowledge, and with the intent to start the motor, he assisted in pushing the car forward. The risk of having the motor to suddenly start was obvious, and whatever danger attended the movement of the car as the result of the motor being put in motion was voluntarily assumed by the plaintiff in undertaking to push the car at the command of his foreman.

With respect to the rotten cross-ties as a participating factor in causing his injury, the plaintiff does not positively allege the railroad company's knowledge of them, but seeks to impute notice because they had been in that condition for several days. He was a track-hand, and his duty was to repair the tracks. The duty to make necessary repairs imposed the duty to discover the condition of the track which would require the repair to be made. The plaintiff's means of knowledge were greater than the company's, as the latter's knowledge came from the former's inspection. Besides, it is to be doubted that the condition of the ties was any part of the cause of the injury. From the plaintiff's description of the manner of receiving the injury, the sudden starting of the engine of the motor-car was the primary and sole cause of his injury.