DUNBAR _v._ HINES, director-general.

The first count in the petition set forth a cause of action, and was not subject to general demurrer; but the second count did not set forth a cause of action, and the demurrer thereto was properly sustained.

No. 2294.　MARCH 4, 1922.

Certiorari; from Court of Appeals. 25 _Ga. App._ 675.

This was an action by an employee of a railroad company, to recover damages for personl injuries. The petition contained two counts. In the first count the injury was alleged to have occurred under the following circumstances: About 3.30 o'clock in the afternoon of January 11, 1918, the plaintiff, as one of a switching crew composed of himself, a conductor in charge of the crew, an engineer and a fireman, was engaged in switching a freight-car in the yards of the defendant, for the purpose of placing it opposite a small building near the track. The train consisted of the engine, tender, and one car. Plaintiff stood with his right foot on the lower round of a ladder attached to the rear end of the east side of the car, holding to an upper round of the ladder with his right hand, and giving signals with his left hand to the engineer as the car was being backed towards the place where it was to be deposited. Just as the car stopped at the place, and while plaintiff was in the position above described, he was struck on his head by some heavy wooden substance or instrument, not a part of the car, that should not have been upon the top of the car, and that fell, or was blown down by the wind, from the top of the car and caused the injury. He did not know that the instrument had been placed or left on the car, and had no reason to anticipate its presence, or that he would be injured by its falling. The defendant was alleged to have been negligent in that: (_a_) The defendant's agents and employees placed said foreign substance or instrument upon the top of said car. (_b_) Said agents and employees, knowing said substance or instrument to be upon the top of said car,

allowed it to remain there and operated said car with it on the top. (*c*) Said agents and employees, knowing that said substance or instrument was upon the top of said car and that by the movement of the train or the force of the wind it might be thrown or blown from the car and fall upon some employee using the ladder or standing upon the side of the track, carelessly and negligently allowed it to remain on top of the car while operating it, and as the result of so leaving it petitioner was injured.

The second count was in the same language as the first, except as to the cause of the injury and the negligence of the defendant. Upon this subject it was alleged: That the substance or instrument with which plaintiff was struck "was a part of a building belonging to the defendant, and which was blown by the wind and carried over the top of the freight-car and fell upon him. . . The building . . was erected more than thirty years ago. . . It was used for the purpose of housing engines when not in service; . . was a poor structure when it was first built; . . was not housed from the roof to the ground; . . was only weatherboarded on the side near the top, and really consisted of some upright pieces with a roof out of some material made of cotton or paper, with a small portion of the weatherboarding on two sides to hold the building together; . . was weakly constructed and had become weaker; . . was so weakly put together that wind blowing from 31 to 35 miles was sufficient to take off a portion of the paper roof and scantlings and carry them over the car and hurl them against petitioner. . . Said building had become weak and frail by age; . . the timber of which it was constructed had decayed; this was especially true of the roof; and for this reason said building was unable to stand a wind blowing 30 or 35 miles an hour. . . The roofing on said building at the place where it was blown off was of an inferior quality, and it had become decayed, . . and . . as a result was not strong enough to resist an ordinary wind of 30 or 35 miles velocity; . . the defendant knew or in the exercise of ordinary care should have known of the rotten and frail condition of said building." The substance which struck plaintiff was blown off the roof by a wind having a velocity of 30 to 35 miles an hour. There was no allegation that he did not know the condition of the building. In this count the defendant was alleged

to have been negligent in that: (*a*) It constructed said building in the frail and weak manner in which it was originally built. (*b*) It did not construct a strong and safe building for the purpose of housing its engines. (*c*) It maintained said building thus weakly and dangerously constructed upon its grounds, when it knew, or in the exercise of ordinary care should have known, that the same could be unroofed by an ordinary wind. (*d*) It continued to use said building after it had become weak and frail after the lapse of thirty or more years. (*e*) It allowed said building to remain upon its yards, adjacent and near to its tracks, after it had become so frail and weak that it could be shaken to pieces by a wind blowing with a velocity of thirty-one to thirty-five miles per hour.

The trial court sustained the general demurrers to each count in the petition, and dismissed the same. On appeal to the Court of Appeals this judgment was affirmed; and the case is now in this court on certiorari.

*Robert L. Berner,* for plaintiff.

*Harris, Harris & Witman,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. The first count of the petition in this case alleged (1) employment of the plaintiff by the defendant carrier, (2) injury while in such employment, (3) injury to the plaintiff while in the discharge of his duty as a switchman, resulting from his being struck by some heavy wooden substance, not a part of the car, on the ladder of which he was riding, and giving signals to the engineer as the car was being backed toward the place where it was to be deposited, said heavy wooden substance being blown by the wind from the top of the car and injuring him; (4) plaintiff did not know that said instrument had been placed or left on the car, and had no reason to anticipate its presence there, or that he would be injured by its falling; and the employees of defendant knew of the presence of said instrument upon said car, allowed it to remain there, and operated said car with said instrument on the top thereof; (5) the negligence of the defendant's employees in placing said instrument on the top of said car, operating the same with it thereon, and carelessly and negligently allowing it to remain on the top of said car when in operation, from which his injury resulted; and (6) the amount of damages claimed.

The first count containing the above allegations set forth a cause of action, which would entitle the plaintiff to recover on proof thereof.    Civil Code, § 2782; *Gorley* v. *Coleman,* 113 *Ga.* 994 (39 S. E. 558).

2.    Does the second count of the petition set forth a cause of action?    This count alleges injury to the plaintiff while in the service of the defendant as a switchman, and while engaged in the line of his duty as such.    While engaged in switching a box-car on which he was riding, and giving signals to the engineer, as such box-car was being taken to the place where it was to be left, he was struck by a part of a building belonging to the defendant, which part was blown by the wind and carried over the top of the freight-car, and fell upon him, from which he was injured.    This building was for the purpose of housing engines when not in service.    It was a poor structure when first built.    It was only weatherboarded on the sides near the top.    It really consisted of some upright pieces, weatherboarded as stated, with a roof of some material made of cotton or paper, was weakly constructed, and had become weaker from age and decay.    It was so weakly constructed that the wind, blowing from thirty to thirty-five miles per hour, was sufficient to take off a portion of the paper roof and scantlings, carry them over the car, and hurl them against him, whereby he was injured.    The defendant knew, or, in the exercise of ordinary care, should have known of the rotten and frail condition of said building.    The defendant was negligent in having constructed said building in its original frail and weak condition; it did not construct a safe building for the purpose of housing its engines; it maintained said building thus weakly and dangerously constructed upon its grounds. when it knew, or in the exercise of ordinary care should have known, that the same could be unroofed by an ordinary wind; it continued to use said building after it became weak and frail after the lapse of thirty or more years, and it allowed said building to remain upon its yards, adjacent to its track, after it had become so frail and weak that it could be shaken to pieces by the wind blowing at the rate of thirty to thirty-five miles per hour.

It is urged by counsel for the defendant that the petition in this case was properly dismissed, (*a*) because it does not plainly, fully, and distinctly set forth a cause of action; and (*b*) because

the petition does not show that the negligence of the defendant, if any, was the proximate cause of the plaintiff's injury. It is further urged that the second count is defective, because it does not allege that the plaintiff did not know, or, by the exercise of ordinary care, could have known, of the dangerous condition of the engine-house, a portion of which was blown by the wind upon the car on which he was riding at the time of his injury, and by which he was struck and injured. The petition in this case is not subject to the first objection so urged, and is good against a general demurrer, the court not having passed upon the grounds of special demurrer. *Hudgins* v. *Coca-Cola Bottling Co.*, 122 *Ga.* 695 (50 S. E. 974).

According to the allegations of the petition, negligence of the defendant was the proximate cause of the injury to the plaintiff; and this court can not hold as a matter of law that this negligence was not such proximate cause. If a master is liable to his servant for an injury arising from a dead tree, standing near the road-bed of its tramroad, being blown upon a car operated on such tramroad, on which car such employee was riding, and by the falling of which tree the car was derailed and he was injured, the master knowing of the presence of such dead tree (*Corley* v. *Coleman,* 113 *Ga.* 994, supra), a railway company doing the business of a common carrier will be liable to its servant who is hurt by the maintenance of a dangerous structure adjacent to its right of way, by which such servant was injured.

The main question, as to the sufficiency of the second count of this petition, is whether the same should have contained the allegation that the servant did not know, and by the exercise of ordinary care could not have known, of the existence of this old, frail, and decayed engine-house of the defendant, and that parts thereof were liable to be blown by the wind upon employees working upon the track adjacent thereto. By the employers' liability act of this State it is provided that "Every common carrier by railroad shall be liable in damages to any person suffering injury while he is employed by such carrier, . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defects or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment: Pro-

vided, nevertheless, no recovery shall be had hereunder if the person killed or injured brought about his death or injury by his own carelessness amounting to a failure to exercise ordinary care; or if he, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence." Civil Code, § 2782. This section, which is codified from the act of 1909, was intended to work, and did work, a great change in regard to the right of employees of common carriers by railroad to recover for injury arising from the negligence of the carrier or of coemployees. *Atkinson* v. *Alexander,* 142 *Ga.* 124 (82 S. E. 561).

Does good pleading under this statute require the plaintiff to negative in his petition the existence of negligence amounting to a failure to exercise ordinary care on his part? Must he likewise allege that he could not by the exercise of ordinary care have avoided the consequences of the defendant's negligence? It is not necessary to answer these questions to dispose of this case.

Does good pleading, under the facts of this case, require the plaintiff to allege in his complaint, that he did not know of the defect in this engine-house and the consequent danger therefrom, and that he could not by the exercise of ordinary care have avoided the negligence of the defendant? The Supreme Court of the United States has held that the Federal employer's liability act has not taken away the defense of the assumption of risks by the employee. Seaboard Air-Line Ry. Co. *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). This court has held that our State employers' liability act does not exclude the doctrine of the assumption of risks as a defense. *Emanuel* v. *G. & F. Ry. Co.,* 142 *Ga.* 543, 546 (83 S. E. 230) ; *Macon etc. Ry. Co.* v. *Musgrove,* 145 *Ga.* 647 (89 S. E. 767). This doctrine being still in force in this State, must an employee, suing a railroad carrier for damages, allege that he was not guilty of negligence amounting to lack of ordinary care, or that he could not by the use of ordinary care have avoided the consequences of the defendant's negligence? Under the law in force before the present employer's liability act, an employee could not recover unless he was without fault. Under that law it was necessary for the plaintiff to allege that he was free from fault, and that the defendant was negligent. *Pierce* v. *Seaboard Air-Line*

*Railway,* 122 *Ga.* 664 (50 S. E. 468) ; *Central of Georgia Ry. Co.* v. *Ruff,* 127 *Ga.* 200 (56 S. E. 290).

In suits for injuries arising from the negligence of the master, when the dereliction of duty consists in the failure to provide a safe place to work, or a failure to warn the servant of an unknown danger, the servant must not only make it appear that the master failed to perform his duty to furnish him a safe place to work, or to warn him of an unknown danger, but also that the servant injured did not know and had not equal means of knowing of the defective condition of the instrumentality employed or of the danger, and by the exercise of ordinary care could not have known thereof; and it is necessary to allege these facts in the complaint. *Roland* v. *Tift,* 131 *Ga.* 683 (63 S. E. 133, 20 L. R. A. (N. S.) 354) ; *Quinn* v. *Allen,* 1 *Ga. App.* 807 (57 S. E. 957) ; *Cedartown Cotton etc. Co.* v. *Miles,* 2 *Ga. App.* 79 (58 S. E. 289) ; *Southern States Cement Co.* v. *Helms,* 2 *Ga. App.* 308 (58 S. E. 524).

The failure of the second count in the petition to allege that the plaintiff did not know of the defect and danger in the engine-house from which the timber was blown, and by which he was hurt, rendered this count subject to general demurrer; and the court did not err in sustaining the general demurrer thereto.

*Judgment reversed in part, and affirmed in part. . All the Justices concur, except Gilbert, J., absent, and*

BECK, P. J., and ATKINSON, J., who concur in the ruling as to the first count in the petition, and dissent as to the ruling upon the demurrer to the second count.