## SOUTHERN RY. CO. v. ROBERTS.

### No. 14136.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

───◆───

Rembert Marshall, Atlanta, Ga. (Marshall, Greene, Baird & Neely, Atlanta, Ga., W. Neal Baird, Atlanta, Ga., of counsel), for appellant.

Thomas B. Branch, Jr., Atlanta, Ga., James A. Branch, Atlanta, Ga., for appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This action, originally filed in the state court and removed to the federal court, was brought by the widow of Joseph L. Roberts against Southern Railway Company and J. P. Cawley to recover damages for Roberts' death. For reasons not necessary to be discussed here, Cawley was dismissed as a party defendant and the suit, tried by the Court without a jury, proceeded to judgment against the Railway Company. Although neither the complaint nor the answer specifically indicates that the suit was filed pursuant to the Georgia Employers' Liability Act of 1909,[1] the parties concede that it was, and the case was apparently so tried.

Roberts, a machinist, and Cawley a boilermaker had both been employed by the Railroad Company at its Inman Yards in Atlanta, Georgia, for a number of years prior to August 4, 1945. On that date, between 8 and 9 o'clock in the morning, Cawley went to the office of the general foreman, J. M. Jones, and asked him if he would discharge a man for fighting. Jones, who was talking over the telephone at the time, without interrupting his telephone conversation, replied that it would depend upon what the fight was about. A few moments later Cawley was seen standing over the body of Roberts, whom he had apparently struck with his fist. Cawley muttered something and walked off in the direction of the washhouse. Roberts was taken to the hospital where he died the following day. The record does not disclose any further details of this tragic occurrence.

The complaint alleged as grounds for recovery that Cawley "was a man of violent and ungovernable temper and disposition, having a propensity to bully and assault and injure others without cause"; that this was known to the defendant and it nevertheless continued to retain him in its employ in close proximity to complainant's deceased husband; furthermore, that the foreman, Jones, took no steps at the time of the inquiry just related to avoid or prevent any fighting on the part of Cawley, and that the death of her husband was caused by the unprovoked assault of Cawley jointly with the wrongful acts of the defendant in continuing to employ Cawley, and by the failure of the defendant to investigate what Cawley meant or intended by his question, and in failing to take steps to prevent injury or damage to any of its employees. Defendant denied that Cawley was of dangerous and violent character and asserted that under the circumstances its foreman had no opportunity to make any

1. Georgia Code of 1933, Title 66, § 401 et seq., formerly section 2782 et seq. of the Georgia Code of 1910.

inquiry and, further, that there was nothing in the conversation to put him on notice that Cawley intended to assault anyone, or engage in any fighting at that time.

Cawley had been employed by the Railway Company at Inman Yards since 1937, and possibly prior thereto. During the period of 1937 to 1939, he had assigned to him as a helper one Samuels. Samuels testified that during that period Cawley used "bad words" all of the time. It was because of this that he asked to be transferred to another job in 1939. He also testified that Cawley once threatened him. When asked to relate the details of this incident, Samuels "couldn't just exactly say", but stated that "he just threatened me once and got down off the engine and went on about his business." Samuels made no report to his supervisors concerning Cawley's conduct, nor did he tell them why he desired to be transferred to another job.

A former employee of Southern Railway Company, George W. Simmons, testified that Cawley had a reputation of being hot tempered, dangerous, a troublemaker, and for drinking on the job. He said that about six weeks before Roberts' death Cawley had made an assault upon him and had threatened to, and indicated that he was going to, drag Simmons to the foreman to report what Cawley thought was improper conduct on Simmons' part. Thereafter, Cawley reported the incident to foreman Jones and the latter talked to Simmons about it. Simmons related his version of the altercation to Jones and told him that Cawley was a dangerous man.

Another former employee, Claud E. Jones, testified that Cawley had a reputation of being overbearing and that he was a "bad sort of fellow to play pranks on people, then you could take it or leave it, you could either fight with him or let it go." He further testified that Cawley was not a dangerous person, but that he tried to start a fight with nearly everyone in the shop, explaining that he would provoke people by playing pranks on them, rather than being the aggressor in fights. In 1942, Cawley played a very offensive prank on the witness. As a result, Jones attacked Cawley and tried to kill him. From the testimony, the fighting was all by Jones, though Cawley undoubtedly provoked it by his offensiveness. This fight was called to the attention of both the general foreman and the roundhouse foreman. Jones stated that he had seen Cawley drink on the job and had taken drinks with him.

On behalf of the defendant it was testified by foreman Jones, its master mechanic, who was immediately over him, the assistant roundhouse foreman, the boiler foreman, and a former boilermaker in the roundhouse that Cawley was not of a dangerous character and that while he engaged in "pranks" they were no more numerous than those customarily played by others in and around the roundhouse. Foreman Jones had been transferred to the Inman Yards roundhouse after the occasion when employee Claud Jones, in 1942, attacked Cawley and tried to kill him. He was unable to recall the complaint against Cawley which former employee Simmons related in his testimony. According to Jones' estimate of Simmons, he was an aged man continually making complaints about matters of such moment as the employees smoking cigarettes and failing to put waste paper in its proper place. With reference to the question put to him by Cawley at the time of the telephone conversation, he testified that Cawley showed no evidence of being upset or angry and merely made the inquiry and left before he completed his telephone conversation. He had no time within which to make further inquiry.

The court found that prior to August, 1945, Cawley "had been engaged in at least two quarrels or alterations with fellow employees", one of these being the fight in 1942, with Claud E. Jones, and the other a "difficulty" in 1937, with employee Samuels. That "it was customary for the employees to play practical jokes on each other, sometimes of a rather crude nature, of which fact, the circumstances show, the defendant company, its agents, foreman and superintendent had knowledge." The court further found that it was probable that the deceased Roberts had knowledge of Cawley's disposition and reputation, and made no complaint and continued to work in the roundhouse with Cawley. The court

thought, however, that it did not appear that the deceased knowingly assumed the risk of death at Cawley's hands. With reference to the conduct of the foreman Jones at the time Cawley made the inquiry to him about the consequences to an employee who engaged in a fight, the court found that under the circumstances it was the foreman's duty to intervene and prevent injury by Cawley upon any employee. This finding is set forth in the margin.[2] From all of the circumstances, including the failure to present Cawley, who was available, as a witness, it was found that the attack by Cawley upon Roberts was without legal justification, and that the defendant was negligent "not only in retaining the said Cawley in its employ, with knowledge of the latter's disposition and reputation for violence, but also in failing to exercise due care to prevent such injury and damages to Roberts at the hands of Cawley." In its conclusions of law, the court adjudged that under the applicable Georgia law, statutory and decisional, the defendant had breached its duty to the deceased employee by retaining Cawley in its employ with knowledge of his character and disposition for violence and that the plaintiff was not barred from recovery because her deceased husband had knowledge of Cawley's disposition, since it did not appear that Roberts appreciated the danger to which he was exposed. Plaintiff's damages were fixed, at $20,000 and judgment entered accordingly.

There are many nice points of Georgia law discussed and applied in the court's conclusions of law, as well as in the briefs and arguments of counsel, in opposition to, and support of, the trial court's conclusions. We have carefully considered and investigated each point presented. However, mature consideration of the case has brought conviction that the evidence is insufficient to support the plaintiff's charge that Cawley was a man of such violent and dangerous disposition that the defendant's retention of him in its employ was a breach of its legal duty to the deceased and other of its employees. We think the finding of the court to the contrary is erroneous because unsupported by sufficient evidence. The insufficiency in the plaintiff's case is in the facts. We find no great difficulty or room for doubt in the applicable Georgia law, and hence need only briefly indicate the controlling principles.

Under Section 66-301 of the Georgia Code of 1933,[3] a master is bound to exercise ordinary care in the selection of servants; and not to retain them after knowledge of incompetency.[4] Although this duty is nondelegable, Atkinson v. Empire Printing & Box Co., 76 Ga.App. 206, 45 S.E.2d 280, the master is not an insurer of the competency of his servants. Keith v. Walker Iron & Coal Co., 81 Ga. 49, 75 S.E. 166; 56 C.J.S., Master & Servant, § 312. Inasmuch as negligence is the basis of the master's liability for injuries to his employees, recovery may be had only when the master has failed to exercise ordinary care in the selection and retention of his servants. The rule is further qualified and restricted by Section 66-303 of the Code,

2. "Under some circumstances it might be assumed that Jones, knowing that Cawley was a member of a labor committee and therefore accustomed to making inquiries as to the rules of the company from time to time, on this particular occasion assumed, and had a right to assume, that Cawley had such a purpose upon the occasion referred to. However, the defendant company at that time, its agents and employees, including the said Jones, knew of Cawley's reputation and disposition, and of his previous altercations, and knew or should have known, that the question asked by the said Cawley referred to a fight, or proposed fight, by Cawley himself with other employees,

and under such circumstances it was the duty of Jones, as defendant's superintendent, to intervene immediately and prevent any injury by Cawley upon any other employee."

3. Codified in the Georgia Code of 1895 as Section 2611 and in the Georgia Code of 1910 as Section 3130.

4. The duty of a master with respect to the selection and retention of servants is similar to the duty owed by him with respect to the furnishing of machinery and appliances. Section 66-301, supra; Di Bari v. J. W. Bishop Co., 199 Mass. 254, 85 N. E. 89, 17 L.R.A.,N.S., 773.

supra,[5] wherein it is provided "in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant * * *; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." Construing these two statutes together, as they must be construed, it is clear that the duty of the master to select and retain only competent servants is not absolute, but is to be measured by knowledge, actual or constructive of the probable results of his conduct. Likewise, where a servant has knowledge, or has an equal opportunity with the master to acquire knowledge, of the incompetency of his fellow-servant there can be no recovery. In such a case the servant will be said to have "waived" the negligence of the master. The Richmond & Danville R. Co. v. Worley, 92 Ga. 84, 18 S.E. 361.

These principles are applicable to actions brought under the Georgia Employers' Liability Act of 1909, supra. Indeed, the Georgia courts treat the defeasive proviso of the statute which bars recovery if the injury or death was occasioned by the employee's "failure to exercise ordinary care; or if he, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence" as the same in law as the general statutory provision that in such cases the employee may not recover if he has knowledge, or an equal opportunity with the master to acquire knowledge, of the incompetency of his fellow-servant.[6] The provision of that section of the Georgia Employers' Liability Act, supra,[7] which abolishes the defense of the assumption of risk where there has been a violation by the common carrier of any statute enacted for the safety of the employees has reference, we think, to statutes specifically applicable to the operations and equipment of such carriers and is not intended to, and can not properly, apply to the provisions of Section 66-301 of the Georgia Code, discussed supra.

Returning to the facts of this case, and viewing them as they existed prior to the date of the unfortunate, and, so far as disclosed, uncalled for, assault by Cawley upon Roberts, we find the record devoid of any evidence of a propensity of Cawley to violence, or even fighting, as those words are understood and must be applied where it is sought to charge an employer, under the statute, supra, with negligence in retaining a dangerous person in employment. It is clear upon the evidence that Cawley was a prankster, and at least one time, in 1942, engaged in a foul and of-

5. This section was codified in the Georgia Code of 1895 as section 2612 and in the Code of 1910 as section 3131. It was observed in Southern States Cement Co. v. Helms, 2 Ga.App. 308, 316, 58 S.E. 524, that sections 2611 and 2612 of the Code of 1895, now sections 66-301 and 66-303, respectively, are not of statutory origin. The court stated that these two sections taken conjunctively are measurably accurate in stating the rule upon the subject of master and servant, but that codification has given them no element of exhaustiveness; the whole law of master and servant exists just as it did before these sections appeared in the code.

6. Dunbar v. Hines, 152 Ga. 865, 871, 111 S.E. 396, and citations. See also, Bowers v. Louisville & Nashville R. Co., 33 Ga.App. 692, 127 S.E. 667; Louisville & Nashville R. Co. v. Dunn, 21 Ga.App. 379, 94 S.E. 661; Atlanta, Birmingham & Atlantic Ry. Co. v. Smith, 23 Ga.App. 198, 98 S.E. 90, and citations; Flippin v. Central of Ga. Ry. Co., 35 Ga.App. 243, 132 S.E. 918; Western & Atlantic R. v. Edwards, 40 Ga.App. 66, 148 S.E. 628; Tanner v. Louisville & N. R. Co., 45 Ga. App. 734, 165 S.E. 761; Atlantic B. & C. R. Co. v. King, 55 Ga.App. 1, 189 S. E. 580; Ray v. Western & Atlantic R., 62 Ga.App. 609, 9 S.E.2d 92, and cases cited.

7. Georgia Code of 1933, Section 66-403. "Assumption of risk of employment.—In any action brought against any common carrier by railroad under and by virtue of any of the provisions of the two preceding sections, to recover damages for injuries to or the death of any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of the employees contributed to the injury or death of such employee."

fensive act in perpetrating a "prank" upon Jones. Such conduct, however, as is made clear from the testimony, did not include any course of making physical assaults upon others. Instead, the testimony of Jones is that such conduct would incite the person subjected to it to fight Cawley, the perpetrator. This witness' meaning is clear, for upon the occasion of the fight in 1942, which the court found one element evidencing Cawley's violent disposition, Jones was the assailant, though we must say he would have been fully justified if he had adopted less dangerous means of assault than with the two iron brackets which he employed. Samuels, whose position was that of Cawley's helper, had as his main complaint that Cawley used "bad words". Furthermore, no notice of his complaint was ever brought to the attention of the employer. These two instances, upon which the court relied, one three years, and the other six, before the assault by Cawley upon Roberts, entirely failed to establish any specific instances of Cawley's fighting or a tendency to violence. The case here does not involve his tendency to perpetrate pranks upon his fellow employees. Nor is it shown that the attack upon Roberts was in any way related to a prank. Furthermore, there is uncontradicted evidence that in the work in the roundhouse it was not uncommon for employees in the roundhouse generally to play pranks upon their fellow employees. Simmons did testify that upon one occasion six weeks before August 4, 1945, Cawley ran at him to catch him with the avowed purpose of taking him to the office. He also testified that his reputation was that of a dangerous man. The trial court made no specific finding as to this testimony, and our consideration of the record convinces us the omission was intentional. In any event, this is the sole instance in the record where Cawley was shown to be the aggressor in anything approaching an unprovoked assault. As to the reputation of Cawley as a dangerous and violent man, plaintiff has no better standing, for witness Claud Jones testified that he could not say Cawley was dangerous. The trial court gave no weight to the testimony of this witness that Cawley had taken drinks on the job, and properly so, for it is not shown that such violation of the company's rules was brought to its attention, or, in any event, that any drinking on the job in anywise induced the assault upon Roberts. On behalf of the defendant, there was undisputed evidence from the immediate supervisors of Cawley that through the years of his employment there had never been any charge made against him which required disciplinary action, and in fact each of these supervisory officials denied knowledge of any unusual characteristics or reputation of Cawley, though there was no clear refutation of knowledge that Cawley had a tendency to play pranks; however, the witnesses said such tendency was not confined to Cawley.

We conclude that the evidence in the case viewed, as it must be, before and not after, the fatal event will not legally support a finding that Cawley was, during the period of his employment prior to August, 1945, of such dangerous and violent character and disposition that his retention in employment by the defendant was negligence as a breach of its obligations to its other employees to use reasonable care to provide them safe conditions of employment. As with other fact questions, it is not practicable to formulate any rule or measure which will precisely state or determine what quantum of evidence will support a recovery in this class of cases. Each case must be determined upon its particular facts. The evidence here is insufficient to support the findings of the trial court. We are unwilling to approve and enforce any rule of law which would require an employer to discharge an employee with no more dangerous propensities than here disclosed, or similarly which would require a fellow employee, in the exercise of ordinary care, to insist the employer correct the condition and if it be uncorrected, quit his employment.[8]

8. Compare Richmond & Danville R. Co. v. Worley, supra; Camilla Cotton Oil & Fert. Co. v. Walker, 21 Ga.App. 603(3), 94 S.E. 855; Bonner v. Texas Co., 5 Cir., 89 F.2d 291; 35 Amer.Jur. Master & Servant, § 347.

514

In this view of the matter, it follows that the additional, or complementary, (however it may be denominated), ground of claimed negligence arising from the failure of the foreman to detain Cawley and prevent the fight about which the foreman was questioned, is without the support which influenced the trial court's determination that such failure was also negligence, though even this was not specifically found by the court to be a proximate cause of the death of plaintiff's husband. This feature of the case, however, whether considered in connection with the other evidence, or standing alone, is insufficient to form adequate basis for the judgment against the defendant.

The circumstances of this case present no ground to authorize recovery by the plaintiff of damages from the defendant. The trial court should have so adjudged.

Judgment reversed.